IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| L.S., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-25-246-STE |
| ) | |
| FRANK BISIGNANO, ) | |
| Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

I.   PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 14-39). The Appeals Council denied Plaintiff's

request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 1, 2022, the application date. (TR. 16). At step two, the ALJ determined Plaintiff suffered from severe disorders involving: neck pain secondary to small but broad-based disc protrusion at C3-C4 of cervical spine; partially sacralized L5 of lumbar spine; psoriatic arthritis with early changes in the right index finger; epilepsy; Hepatitis C; obesity; major depressive disorder; bipolar disorder; generalized anxiety disorder; personality disorder; PTSD; and substance abuse/dependency. (TR. 16). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 17).

At step four, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 416.967(b) with the following abilities and restrictions: Lift and carry 20 pounds occasionally and 10 pounds frequently; sit 6 hours in an 8-hour workday; stand and walk 6 hours in an 8-hour workday; never climb ladders, scaffolds, or ropes; occasionally climb ramps and stairs, climb ladders, scaffolds, or ropes, balance, stoop, kneel, crouch, or crawl; no working around hazards; no operation of motor vehicles; needs an indoor temp-controlled work environment; can occasionally do overhead reaching and frequently reach

in all other directions; can do frequent but not constant fingering and handling; can perform detailed but not complex job tasks; and can have occasional contact with the public.

(TR. 23).

Because Plaintiff had no past relevant work,[1] the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 73). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles that Plaintiff could perform. (TR. 74). The ALJ then adopted the VE's testimony and concluded, at step five, that Plaintiff was not disabled based on her ability to perform the identified jobs. (TR. 39).

### III.  STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

---

[1] (TR. 37).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV. ANALYSIS

Plaintiff alleges the ALJ erred in: (1) failing to explain a discrepancy between a medical opinion which he found "partially persuasive" and the RFC which did not fully reflect the findings outlined in the medical opinion and (2) his evaluation of a medical opinion and prior administrative findings. (ECF No. 11:7-13). The Court agrees, as to Plaintiff's first contention.

### A. ALJ's Duties to Evaluate Medical Opinions and Prior Administrative Findings and Formulate the RFC

The Social Security Administration has defined categories of evidence, including, as pertinent here, "medical opinions" and "prior administrative findings." *See* 20 C.F.R. § 416.913(a)(2), (3), (5). The regulations define a "medical opinion" as "a statement from a medical source about what an applicant can still do despite his impairment(s) and whether she has one or more impairment-related limitations involving the:

> (A) Ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (B) Ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(C) Ability to perform other demands of work, such as seeing, hearing, or using other senses; or the

(D) Ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 416.913(a)(2).

Prior administrative medical findings, in turn, are findings, other than the ultimate determination about whether an individual is disabled, about a medical issue made by Federal and State agency medical and psychological consultants at a prior level of review, based on a review of the evidence in the claimant's case record, including, but not limited to, an individual's RFC. 20 C.F.R. § 416.913(a)(5).

Under the regulations, when evaluating both prior administrative findings and medical opinions, the ALJ must articulate how persuasive he finds the evidence. 20 C.F.R. § 416.920c(b). The ALJ fulfills this duty by considering a list of factors. *See* 20 C.F.R. § 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements.") 20 C.F.R. § 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ *must* explain how both factors were

considered. *See* 20 C.F.R. § 416.920c(b)(2). The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. § 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 416.920c(b)(3). Additionally, "[i]f the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." Social Security Ruling 96-8p, Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *7 (July 2, 1996). Indeed, the Tenth Circuit has held that failure to explain the omission of limitations found in medical opinions is legal error requiring reversal. *Parker v. Comm'r*, 922 F.3d 1169, 1172–73 (10th Cir. 2019); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding that an ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability).

### B. Relevant Medical Opinions and Prior Administrative Findings and the ALJ's Related Evaluations

On May 8, 2023, one of Plaintiff's primary care providers, Jeremy Logsdon, APRN-CNP, completed a "Medical Source Statement-Physical" for Plaintiff. *See* TR. 524-526. In the decision, the ALJ accurately summarized Nurse Logsdon's opinion by stating:

> On May 8, 2023, Jeremy Logsdon, APRN, CNP, filled out a form in which he indicated the following: The claimant had rheumatoid arthritis, bipolar disorder, depression, anxiety, pseudosomatic seizures, PTSD, methamphetamine use disorder, and dull constant neck pain. She had a non-antalgic gait. Great pain was not appreciated during the examination. Her range of motion was within normal limits. Her speech was normal, and she had no hallucinations, delusions, suicidal ideation, or homicidal ideation. No treatment should affect her work, except for appointments. She had no seizures for over a year. She could frequently lift and carry 10-50 pounds. She could frequently twist, stoop, balance, crouch, crawl, and climb. She could constantly do reaching, handling, feeling, and fingering. She could sit 1 hour at a time and stand 1-2 hours at a time. She could sit at least 6 hours in an 8-hour workday with normal breaks. She could stand and walk at least 6 hours in an 8-hour workday with normal breaks. She needed to shift position at will from sitting, standing, and walking. She did not need unscheduled breaks. It was not necessary for her to use a cane or other assistive device. She did not need to elevate her legs with prolonged sitting or standing. She would be off task 10% of an 8-hour workday because of symptoms interfering with attention and concentration. She was capable of low stress work. She was likely to have good days and bad days. She would be absent from work 2 days per month.

*Compare* TR. 28-29 *with* TR. 524-526.

In evaluating Nurse Logsdon's opinions, the ALJ stated:

> Those opinions were partially persuasive because the opinions regarding specific functional abilities were supported by and consistent with the treatment records and physical examination findings. However, the opinions of the claimant being off task 10% of an 8-hour workday and being absent

> from work 2 days per month were pure speculation not supported by any clinical or examination findings.

(TR. 29).

At the initial and reconsideration levels of review, State Agency physicians Drs. Scott Newton and Robert McGuffin, Jr., rendered "prior administrative medical findings" concerning Plaintiff's physical abilities and limitations. (TR. 85-87, 95-98). In the decision, the ALJ accurately summarized these findings by stating:

> In January and July 2023, Scott Newton, M.D., and Robert McGuffin, Jr., M.D., the State agency medical consultants who evaluated the claimant's case at the initial and reconsideration administrative levels, found the claimant could do light work (lift and carry 20 pounds occasionally and 10 pounds frequently; sit about 6 hours in an 8-hour workday; stand and walk about 6 hours in an 8-hour workday; and unlimited pushing and pulling) with no climbing ladders scaffolds, or ropes; frequent climbing ramps and stairs, kneeling, crouching, or crawling; the need to avoid moderate exposure to hazards; and no manipulative, visual, or communicative limits.

(TR. 32).

In evaluating the prior administrative findings from Drs. Scott and McGuffin, the ALJ stated:

> Those opinions were only partially persuasive because they were somewhat supported by the medical history and findings stated in the reports, and they were somewhat consistent with the overall medical record. They support the conclusion that the claimant can perform light work with no climbing ladders, scaffolds, or ropes, and the need to avoid hazards. However, based on new and material medical records, testimony, and the undersigned's opinion that more extensive limitations are warranted, the claimant has been given the benefit of the doubt in finding the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; cannot work around hazards or operate motor vehicles; needs an indoor temp-controlled work environment; can occasionally do overhead reaching and frequently reach in all other directions; can do frequent but not

constant fingering and handling; and can perform detailed but not complex job tasks due to pain, depression, and anxiety.

(TR. 32).

### C. Error in the ALJ's Failure to Explain the Discrepancy Between Nurse Logsdon's Opinion and the RFC

In her first argument, Plaintiff contends that the ALJ erred in failing to explain a discrepancy between Nurse Logsdon's opinion concerning Plaintiff's need to shift positions at will while working, and the RFC which failed to account for that limitation. (ECF No. 11:8-11). The Court agrees.

Here, after reiterating the entirety of Nurse Logsdon's opinion, including the opinion that Plaintiff would need to "shift position at will from sitting, standing, and walking," the ALJ found Nurse Logsdon's "partially persuasive," but clearly rejected the portions of the opinion concerning Plaintiff being off task 10% of an 8-hour workday and being absent from work 2 days per month as "pure speculation not supported by any clinical or examination findings." *See supra*, TR. 29. In doing so, and based on the fact that the ALJ specifically rejected these findings, but reiterated the entirety of the opinion, and deemed it "partially persuasive," the Court presumes that the ALJ adopted the remaining findings, including the opinion regarding Plaintiff's need to shift positions at will. However, the RFC does not reflect the limitation for shifting positions at will and the ALJ failed to explain the omission, which is error. *See supra; see Parker v. Commissioner*, SSA, 772 F. App'x. at 617 ("Given the discrepancy between the [RFC] and the medical opinions, the agency had an obligation to provide an explanation").

The Commissioner argues that the omission was harmless because the ALJ rejected an identical limitation given by another nurse, Jennifer Nichols, APRN. *See* ECF No. 18:4-6. Indeed, Nurse Nichols completed a form similar to the form that Nurse Logsdon completed, and like Nurse Logsdon, Nurse Nichols stated that Plaintiff would need to shift positions at will while working. (TR. 641). Defendant points to the ALJ's evaluation of Nurse Logsdon's opinion, noting that the ALJ found Nurse Nichols' opinions unpersuasive as "not supported by the examination findings" and "not consistent with the evidence." *See* ECF No. 18:4-5; TR. 31. While the Commissioner is correct, the ALJ's explanation is insufficient to salvage the error previously discussed. In explaining his rejection of Nurse Nichols' opinions, the ALJ stated:

> The examination findings sometimes show restricted range of motion of the neck, but not always, and the physical examination findings do not show significant range of motion limitations of the upper extremities. Her sensation also has been intact or normal, indicating she can feel and finger. Her attention and concentration also have been consistently intact. The opinions of the claimant being off task 25% of an 8-hour workday, was incapable of doing a low stress job, and being absent from work more than 4 days per month were pure speculation not supported by any clinical or examination findings.

(TR. 31). But once again, the ALJ failed to specifically explain why he rejected Nurse Nichols' opinion that Plaintiff needed to shift positions at will while working, and again, the limitation was not reflected in the RFC. Thus, the Court rejects the Commissioner's argument and indeed finds that it only tends to underscore the error committed in the first instance. Remand is necessary for an explanation regarding the discrepancy between Nurse Logsdon's opinion that Plaintiff needs to shift positions at will while working and

the RFC which failed to account for the limitation. See Wood v. Kijakazi, No. CIV-21-8-AMG, 2022 WL 1671116, at *4 (W.D. Okla. May 25, 2022) ("The ALJ erred in failing to explain why he did not include in the RFC [certain] limitations . . . when he expressly found Dr. Sparks' opinion to be 'somewhat persuasive[.]. . .' The ALJ's decision to exclude these limitations from the RFC amounts to prohibited 'picking and choosing' from medical opinions.").

### D. No Error in the ALJ's Evaluation of the Opinions from Nurse Logsdon and the Prior Administrative Findings from Drs. Scott and McGuffin

In her second argument, Plaintiff contends that the first allegation of error "was compounded" by an error in the ALJ's evaluation of the opinion from Nurse Logsdon and the prior administrative findings from Drs. Scott and McGuffin. (ECF No. 11:11-13). As stated, the ALJ was required to evaluate the persuasiveness of the evidence by discussing the factors of "supportability" and "consistency," which he did. See supra. But Plaintiff alleges error in the ALJ's failure to discuss the "other" factors under 416.920c(b), which an ALJ is required to do "when [he] finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same[.]" 20 C.F.R. § 416.920c(b)(3).

Plaintiff's argument apparently hinges on the fact that the ALJ found the opinion from Mr. Logsdon and the prior administrative findings from Drs. Scott and McGuffin all "partially persuasive." (ECF No. 11:11-12). But the level of persuasiveness is not what triggers the additional duty to explain and consider the other factors. Instead, the duty

is triggered when the ALJ finds two or more opinions **on the same issue** as equally well-supported and consistent with the record. *See supra*. Indeed, in *Leep v. Kijakazi*, No. CIV-466-RAW-SPS, 2022 WL 879567, at *4 (E.D. Okla. Mar. 8, 2022) which Plaintiff cites in support of this proposition, the Court specifically noted that the duty was triggered because two different physicians "came to very different conclusions on [the same issues]—difficulty of tasks the claimant can handle and the adaptivity of the claimant." But here, Plaintiff readily admits that "these opinions [from Nurse Logsdon and Drs. Scott and McGuffin] didn't include the same limitations." (ECF No. 11:12). As a result, no additional explanation was necessary and the ALJ did not err by failing to discuss the "other factors" as set forth in 20 C.F.R. § 416.920c(c).

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on August 28, 2025.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE